IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01857-PAB-KMT

JOELLE RIDDLE,
GARY HAUSLER,
KATHLEEN CURRY,
THE COMMITTEE TO ELECT KATHLEEN CURRY, and
THE LIBERTARIAN PARTY OF COLORADO,

     Plaintiffs,

v.

JOHN HICKENLOOPER, in his official capacity as Governor of the State of Colorado, and
SCOTT GESSLER, in his official capacity as Secretary of State of the State of Colorado,

     Defendants.

---

**ORDER**

---

     This matter is before the Court on the Motion for Summary Judgment [Docket No. 62] filed by plaintiffs Joelle Riddle, Gary Hausler, Kathleen Curry, the Committee to Elect Kathleen Curry, and the Libertarian Party of Colorado,[1] as well as the Motion for Summary Judgment [Docket No. 70] filed by defendants John Hickenlooper, in his official capacity as Governor of the State of Colorado, and Scott Gessler, in his official capacity as Secretary of State for the State of Colorado.

---

[1]On January 19, 2012, plaintiff filed an amended complaint [Docket No. 60], which added the Libertarian Party of Colorado as a plaintiff.

## I.  BACKGROUND[2]

### A.  Amendment 27

In November 2002, the voters of Colorado passed Amendment 27, a
constitutional amendment which imposed certain restrictions on campaign financing.
Colo. Const. art. XXVIII, § 3; *see Colo. Right to Life Comm., Inc. v. Coffman*, 498 F.3d
1137, 1139 (10th Cir. 2007).  Amendment 27 states that "large campaign contributions
to political candidates create the potential for corruption and the appearance of
corruption," Colo. Const. art. XXVIII, § 1, and, as a result, imposes limits on the amount
individuals and political committees can contribute to a candidate for statewide office.
Specifically, § 3(1) provides:

> (1) Except as described in subsections (2), (3), and (4) of this section, no
> person, including a political committee, shall make to a candidate
> committee, and no candidate committee shall accept from any one
> person, aggregate contributions for a primary or a general election in
> excess of the following amounts:
>
> (a) Five hundred dollars to any one:
>
> (I) Governor candidate committee for the primary election, and governor
> and lieutenant governor candidate committee, as joint candidates under 1-
> 1-104, C.R.S., or any successor section, for the general election;
>
> (II) Secretary of state, state treasurer, or attorney general candidate
> committee; and
>
> (b) Two hundred dollars to any one state senate, state house of
> representatives, state board of education, regent of the university of
> Colorado, or district attorney candidate committee.

---

[2]The following facts, unless otherwise indicated, are not in dispute.

Colo. Const. art. XXVIII, § 3(1).  Those found in violation of the contribution limits are

"subject to a civil penalty of at least double and up to five times the amount contributed,

received, or spent."  Colo. Const. art. XXVIII, § 10(1).

On May 21, 2004, the Colorado General Assembly passed House Bill 1121

("H.B. 1121"), which enacted statutory provisions to implement certain sections of

Amendment 27.  Specifically, H.B. 1121 provides that:

> (3) A candidate committee may accept:
>
> (a) The aggregate contribution limit specified in section 3(1) of article XXVIII of the state constitution for a primary election at any time after the date of the primary election in which the candidate in whose name the candidate committee is accepting contributions is on the primary election ballot; or
>
> (b) The aggregate contribution limit specified in section 3(1) of article XXVIII of the state constitution for a general election at any time prior to the date of the primary election in which the candidate whose name the candidate committee is accepting contributions is on the primary election ballot.
>
> (4) A candidate committee may expend contributions received and accepted for a general election prior to the date of the primary election in which the candidate in whose name the candidate committee is accepting contributions is on the primary election ballot.  A candidate committee established in the name of the candidate who wins the primary election may expend contributions received and accepted by a primary election in the general election.

Colo. Rev. Stat. §§ 1-45-103.7(3)-(4).  In effect, Colo. Rev. Stat. § 1-45-103.7 regulates

contributions using a per-election framework, meaning that individuals and political

committees[3] may contribute a total of $400 to a candidate who participates in both a

---

[3]Political committee is defined as "any person, other than a natural person, or any group of two or more persons, including natural persons that have accepted or made contributions or expenditures in excess of $200 to support or oppose the nomination or election of one or more candidates."  Colo. Const. art. XXVIII, § 2(12)(a).

primary election and a general election (i.e. $200 per election).  Candidates who participate in a primary and a general election may accept $400 contributions at any time and may commingle primary election funds and general election funds without limitation.[4]  By contrast, individuals and political committees may only contribute $200 to primary-exempt candidates (i.e. candidates who only participate in a general election).[5]

In Colorado, candidates from the two major political parties – the Democratic Party of Colorado and the Colorado Republican Party – are always subject to a primary election, regardless of whether the primary is opposed.[6]  Therefore, for all statewide elections, all major party candidates may receive contributions of up to $400.  By contrast, candidates for the three minor political parties – the Libertarian Party of Colorado, the American Constitution Party, and the Green Party of Colorado – are subject to a primary election only if their primary is opposed.  *See* Colo. Rev. Stat. § 1-4-1304(d) ("If only one candidate is designated for an office by petition or assembly [by a minor party], that candidate shall be the candidate of the minor political party in the general election").  Write-in candidates and unaffiliated candidates do not participate in primary elections and their names do not appear on primary election ballots.  *See* Colo.

---

[4]An individual or a political committee can make a $400 contribution to a candidate before the primary election or after the primary election; the statute does not require candidates to provide an accounting for how the funds are used.  Docket No. 60 at 8, ¶ 31.

[5]These contribution limits function in the same manner for gubernatorial elections.  *See* Colo. Rev. Stat. § 1-45-103.7; Docket No. 60 at 8, ¶ 30.

[6]"All nominations by major political parties for candidates for United States senator, representative in congress, all elective state, district, and county officers, and members of the general assembly shall be made by primary elections."  Colo. Rev. Stat. § 1-4-101(3).

Rev. Stat. § 1-4-1101(1) (write-in candidates); Colo. Rev. Stat. § 1-4-802 (unaffiliated candidates); Docket No. 60 at 9, ¶ 32.  Unaffiliated candidates obtain access to the general election ballot by nominating petition as set forth in Colo. Rev. Stat. § 1-4-802.

### B.  Plaintiffs' Claims

Plaintiff Kathleen Curry is the former state representative for House District 61. In 2004, Ms. Curry ran as a candidate for the Democratic Party and was elected the state representative for House District 61.  Ms. Curry subsequently won re-election in 2006 and 2008.  In 2009, Ms. Curry disaffiliated herself from the Democratic Party.  In 2010, she unsuccessfully ran for re-election as the state representative for House District 61 as an unaffiliated write-in candidate.  Docket No. 60 at 11, ¶ 40.  Ms. Curry also qualified to run as an unaffiliated candidate for House District 61 in the 2012 general election.  Docket No. 74 at 2.

During her 2010 campaign, Ms. Curry authorized the creation of a political action committee – the Committee to Elect Kathleen Curry, a plaintiff in this case.  Docket No. 60 at 11, ¶ 41.  Pursuant to Amendment 27, the Committee to Elect Kathleen Curry could accept contributions of no more than $200 from individuals and political committees because, as an unaffiliated write-in candidate, Ms. Curry did not participate in a primary.  *Id*. at 10, ¶ 39.

During the 2010 election, Ms. Riddle and Mr. Hausler contributed $200 to the Committee to Elect Kathleen Curry.  Ms. Riddle and Mr. Hausler allege that they wished to make contributions to the Committee to Elect Kathleen Curry in excess of $200, but were deterred from doing so because of the possibility of facing penalties for violating

5

Amendment 27 and its implementing statutes.[7]  Docket No. 60 at 11, ¶¶ 42-44.

Similarly, the Committee to Elect Kathleen Curry asserts that it wished to accept

additional contributions from Ms. Riddle and Mr. Hausler, but was prevented from doing

so because of the risk of civil penalties.

During the 2010 election, Ms. Curry faced two opponents in the general election

for House District 61: Democrat Roger Ben Wilson and Republican Luke Korkowski.  *Id*.

at 12, ¶ 45.  Mr. Wilson and Mr. Korkowski had to participate in a primary election as

representative candidates from the two major parties, but neither actually faced an

opponent in the primary.  Plaintiffs allege that, although Mr. Wilson and Mr. Korkowski

did not have formal opposition in their primary elections, they could accept $400 from

individuals and political committees – $200 for the primary and $200 for the general

election.[8]  *Id*.

Plaintiffs challenge the constitutionality of Colo. Rev. Stat. §§ 1-45-103.7(3) and

(4).  Docket No. 60 at 15-22.  Plaintiffs contend that Amendment 27 is ambiguous and

susceptible to multiple interpretations and that defendants' interpretation of Amendment

27, as reflected by Colo. Rev. Stat. § 1-45-103.7, violates their First Amendment rights.

---

[7]"Any person who violates any provision of this article relating to contribution or voluntary spending limits shall be subject to a civil penalty of at least double and up to five times the amount contributed, received, or spent in violation of the applicable provision of this article.  Candidates shall be personally liable for penalties imposed upon the candidate's committee."  Colo. Const. art. XXVIII, § 10(1).

[8]Plaintiffs allege that, during the 2010 election campaign, Mr. Korkowski received contributions of $400 from 13 individuals, allowing him to collect $2,600 more campaign donations than he could have received had he run as an unaffiliated candidate.  Docket No. 60 at 12, ¶ 46.  Similarly, Mr. Wilson received contributions of $400 from 21 individuals, allowing him to collect $3,625 more in campaign donations than he would have received had he run as an unaffiliated candidate.  *Id*. at 12-13, ¶ 47.

*Id.* Specifically, plaintiffs claim that Colo. Rev. Stat. § 1-45-103.7 violates their freedom of expression and freedom of association rights as well as their Fourteenth Amendment rights to equal protection under the law.  Docket No. 60 at 14, ¶ 52.  Plaintiffs raise both a facial and an "as applied" challenge to the constitutionality of Colo. Rev. Stat. § 1-45-103.7 and charge that the statute is: (1) facially unconstitutional as it abridges the associational and expressive First Amendment rights of all contributors to campaigns of primary-exempt candidates; (2) unconstitutional as applied to Ms. Riddle and Mr. Hausler as it abridges these plaintiffs' associational and expressive rights by limiting their ability to contribute to Ms. Curry's candidacy; (3) facially unconstitutional as it abridges the Fourteenth Amendment rights of all contributors to campaigns of primary-exempt candidates; and (4) unconstitutional as applied to Ms. Riddle and Mr. Hausler as it restricts these plaintiffs' ability to contribute to Ms. Curry's campaign in the same manner as other similarly situated contributors.  Docket No. 60 at 14-22.

### C.   Procedural Posture

Plaintiffs commenced this action on August 4, 2010 [Docket No. 1].  On August 9, 2010, plaintiffs filed a motion for preliminary injunction [Docket No. 7] to enjoin defendants from enforcing the contribution limits set forth in Colo. Const. art. XXVIII, §§ 3(1) and (2).  Docket No. 7 at 15.  The Court held an evidentiary hearing on plaintiffs' motion for a preliminary injunction on September 16, 2010 [Docket No. 28] and denied plaintiffs' motion, finding that Amendment 27's contribution limits did not violate plaintiffs' First Amendment rights or Fourteenth Amendment rights.  Docket No. 36 at 189-205.

On January 11, 2011, pursuant to the parties' request, the Court certified the following question to the Colorado Supreme Court:

> Are C.R.S. §§ 1-45-103.7(3) and (4) consistent with Colo. Const. Art. XXVIII, §§ 3(1) and (2) to the extent that they prohibit the candidate committee of a write-in candidate, who was not on a primary election ballot, from accepting, and donors from contributing, the same aggregate amount of funds as may be contributed to or accepted by the candidate committee of a candidate who appears on both a primary and the general election ballot in the same election cycle?

Docket No. 39 at 6.  On February 4, 2011, the Colorado Supreme Court accepted the Court's certified question.  Docket No. 42.  However, on October 13, 2011, the Colorado Supreme Court vacated its previous order accepting the certified question and, instead, declined to answer it.  Docket No. 44.

On January 19, 2012, plaintiffs filed an amended complaint [Docket No. 60] and filed a motion for summary judgment [Docket No. 62] requesting that the Court enter summary judgment on all four of their claims.  On March 16, 2012, this case was stayed pending additional discovery by defendants.  Docket No. 65.  On July 5, 2012, plaintiffs filed a document entitled Clarification of Issues [Docket No. 66], in which plaintiffs explained that their "causes of action and relief sought are directed solely at the rights of contributors to unaffiliated candidates and contributors to minor party candidates." Docket No. 66 at 2.  On August 6, 2012, after the stay was lifted, defendants filed a motion for summary judgment [Docket No. 70] on plaintiffs' four claims.  *See* Docket No. 71.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non moving party. *Id.; see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non prevailing party. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004). Furthermore, "[w]hen the parties file cross motions for summary judgment, [the Court may] assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).

## III.  ANALYSIS

When construing a provision of a voter-enacted constitutional amendment,

Colorado courts are obligated to give effect to the intent of the electorate that adopted

it.  *Davidson v. Sandstrom*, 83 P.3d 648, 654-55 (Colo. 2004).  A court must ascertain

voter intent based on the plain language of the amendment and give the words of the

amendment their ordinary meaning.  *Patterson Recall Comm., Inc. v. Patterson*, 209

P.3d 1210, 1214 (Colo. App. 2009).  If the intent is not clear from the language, courts

should construe the amendment in light of the objective sought to be achieved and the

mischief sought to be avoided by the amendment.  *Colo. Citizens for Ethics in Gov't v.*

*Comm. for Am. Dream*, 187 P.3d 1207, 1215 (Colo. App. 2008).  Courts may also

discern voter intent by considering materials such as the ballot title, the submission

clause, and the Blue Book.[9]  *Id*.  Nevertheless, courts must favor a construction of a

constitutional amendment that will render every word operative, rather than one that

may make some words idle or nugatory.  *Id*.

### A.  Colo. Const. art. XXVIII, § 3

Plaintiffs argue that Amendment 27 is ambiguous in that the contribution

limitations in Amendment 27 can be read as establishing either a per-election

---

[9]The Blue Book is a voter education booklet prepared by the Legislative Council of the Colorado General Assembly which contains an analysis of statewide ballot proposals and may be used to determine the intent of the voters.  *See Beinor v. Indus. Claims Appeal Office*, 262 P.3d 970, 979-78 (Colo. App. 2011).

contribution limit or a per-cycle[10] contribution limit.  Docket No. 62 at 7-10; Docket No. 73 at 2.

Article XXVIII, § 3 provides, in pertinent part, that "no person . . . shall make to a candidate committee . . . and no candidate committee shall accept from any one person, aggregate contributions for a primary *or* a general election in excess" of the listed amounts.[11]  Colo. Const. art. XXVIII, § 3(1) (emphasis added).  The plain language of the amendment, which states that contributions should be for "a primary or a general election," indicates an intent to distinguish between primary and general elections.  *See Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo. 2006) (finding that Colorado courts "presume the disjunctive use of the word 'or' marks distinctive categories unless the legislative intent is clearly to the contrary"); *Lombard v. Colo. Outdoor Educ. Center, Inc.*, 187 P.3d 565, 571 (Colo. 2008).

Plaintiffs argue that Amendment 27 can be read as imposing a $400 aggregate contribution limit on all contributors regardless of whether their preferred candidate is listed on a primary ballot.  Docket No. 73 at 2.  In support of this argument, plaintiffs argue that the Colorado General Assembly could have construed Amendment 27 in the same manner that the Federal Election Commission ("FEC") construes the Federal Election Campaign Act of 1971 ("FECA"), 86 Stat. 3, as amended, 2 U.S.C. § 431 *et*

---

[10]A per-cycle limitation allows a contributor to donate a certain amount to a candidate's campaign at any time during an election cycle.  Docket No. 62 at 9.

[11]A similar provision that applies to small donor committees states, in pertinent part, that "[n]o small donor committee shall make to a candidate committee, and no candidate committee shall accept from one small donor committee, aggregate contributions for a primary *or* a general election in excess of the" listed amount.  Colo. Cons. art. XXVIII, § 3(2) (emphasis added).

*seq.*[12]  Plaintiffs contend that the General Assembly's failure to implement a regulatory scheme similar to the regulations issued by the FEC renders Colo. Rev. Stat. § 1-45-103.7 unconstitutional both on its face and as applied to plaintiffs in this case.  Docket No. 73 at 2.  The Court disagrees.

Given that Amendment 27 imposes per-election contribution limits, it is unlikely that the General Assembly could have enacted a regulatory scheme similar to the FEC regulations.  Before Amendment 27 became law, individuals and political committees could contribute a maximum of $1000 to a particular candidate committee at any time during an election cycle (i.e., $1000 per-cycle contribution limit).  Docket No. 67-1 at 2 (Blue Book Table 1).  As described in the Blue Book, the voters' intent behind Amendment 27 was to lower the contribution limit for political committees and individuals to $200 per election.  *See id*.  The inclusion of a per-election contribution limit shows that voters were focused, not only on the total amount a prospective candidate could receive, but on how much a candidate could receive per election.  Given that the voters made it clear that they desired to limit contributions on a per-election basis, a statute allowing primary-exempt candidates to receive contributions for primary elections, even if they did not participate in those elections, would run contrary

_____

[12]Under FECA, individuals can contribute no more than $2000 to a candidate for federal office.  *See* 2 U.S.C. § 441a(1)(A).  The $2000 contribution limit applies on a per-election basis meaning that individuals can contribute $2000 for a primary election and $2000 for a general election.  2 U.S.C. § 441a(a)(6).  The FEC regulations issued to implement FECA's contribution limits allow candidates who do not participate in a primary election to choose what constitutes a "primary election" for the purposes of their campaigns.  *See* 11 C.F.R. § 100.2(c)(4).  This regulation, therefore, allows candidates to receive individual contributions of $2000 for a primary, even if the candidates do not actually participate in a primary election.  *Id*.

to the voters' intent.  *See Lobato v. State*, 218 P.3d 358, 375 (Colo. 2009) (finding that courts can consider "materials such as the 'Blue Book,'" to determine "the electorate's intent in enacting a [constitutional] amendment").

Moreover, as defendants note, the only plausible way to adopt plaintiffs' suggested interpretation would be for the General Assembly, and this Court, to construe the word "or" in Amendment 27 to mean "and."  However, in interpreting a voter-enacted amendment, a court is required to give effect to every word of the amendment and cannot render any term superfluous.  *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005) (courts "do not presume that the legislature used language idly and with no intent that meaning should be given to its language").  Accordingly, because the language of the amendment is unambiguous, the Court declines plaintiffs' invitation to construe Amendment 27 in the same manner the FEC has interpreted the language of FECA. *See In re Great Outdoors Colo. Trust Fund*, 913 P.2d 533, 538 (Colo. 1996) (finding that, "[w]hen the language of [a constitutional] amendment is plain, its meaning clear, and no absurdity involved, constitutional provisions must be declared and enforced as written").  Furthermore, the Court finds that Colo. Rev. Stat. § 1-45-103.7 is consistent with Amendment 27 because it implements a regulatory scheme that provides for per-election contribution limits.

**B.   First Amendment**

Plaintiffs contend that Amendment 27 and its implementing statutes infringe their First Amendment freedom of association and freedom of expression rights.  Docket No.

13

62 at 8-10.  Plaintiffs allege that Amendment 27 creates a two-tiered system of contribution limits, wherein contributors to primary-exempt candidates may only contribute one-half the amount contributors may donate to primary-participant candidates.  *Id*.  Plaintiffs argue that such a two-tiered system is not "closely drawn" to match a "sufficiently important" state interest.  *Id*. at 11 (citing *Randall v. Sorrell*, 548 U.S. 230, 247 (2006) (plurality)).

In *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), the Supreme Court noted that a plaintiff can only succeed with a facial challenge to a statute by "establish[ing] that no set of circumstances exists under which the Act would be valid . . . [meaning] that the law is unconstitutional in all of its applications."  *Id*. at 449.  The Court explained that, in determining whether a law is facially invalid, courts must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases.  *Id*. at 450.  Thus, a facial challenge fails where "at least some" constitutional application exists.  *Id*. at 457 (citing *Schall v. Martin*, 467 U.S. 253, 264 (1984)).  Given the foregoing, the Court will begin its analysis with plaintiffs' "as applied" challenge because this challenge must succeed before the Court can consider whether Amendment 27 and its implementing statutes are facially unconstitutional.

In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court considered the constitutionality of several FECA provisions.  The Supreme Court noted that FECA's "contribution and expenditure limitations operate in an area of the most fundamental

First Amendment activities," involving rights of political association and expression.[13]  *Id.* at 14.  The Court found that, in "contrast with a limitation upon expenditures for political expression, a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication."  *Id*. at 20.  The Court explained that this difference is based on the fact that a "contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support."  *Id*. at 21.  Thus, the Court reasoned, a "limitation on the amount of money a person may give to a candidate" does restrict "one aspect of the contributor's freedom of political association," *id*. at 24, namely, the contributor's ability to support a favored candidate, but contribution limits nonetheless "permi[t] the symbolic expression of support evidenced by a contribution," and they do "not in any way infringe the contributor's freedom to discuss candidates and issues."  *Id*. at 21. Consequently, the Court concluded that a contribution limit involving a "significant interference" with associational rights could survive if the government demonstrated that the contribution regulation was "closely drawn" to match a "sufficiently important interest," though the dollar amount of the limit need not be "fine tun[ed]."  *Buckley*, 424 U.S. at 25; *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 737 (2008); *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 387 (2000); *Randall*, 548 U.S. at 246-47.

_____

[13]The Supreme Court's decision in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S.Ct. 876 (2010), addressed only expenditures and disclosure requirements; thus, it does not control the Court's analysis of Amendment 27's contribution limits.  *Id*. at 909 ("Citizens United has not made direct contributions to candidates, and it has not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny").

In defining the scope of what constitutes a significant interference with associational rights, *Buckley* and its progeny have recognized that contribution limitations may be unconstitutional if they: (1) "prevented candidates and political committees from amassing the resources necessary for effective advocacy," *Buckley*, 424 U.S. at 21; (2) "[were] so radical in effect as to render political association ineffective, [and] drov[e] the sound of a candidate's voice below the level of notice, and render[ed] contributions pointless," *Nixon,* 528 U.S. at 397; and (3) "magnif[ied] the advantages of incumbency to the point where they p[laced] challengers [at] a significant disadvantage." *Randall*, 548 U.S. at 248.  Thus, when courts analyze whether a contribution limitation is permissible, they examine when "distinctions in [the] degree [of contribution limitations] . . . can be said to amount to differences in kind." *Buckley*, 424 U.S. at 30; *Nixon*, 528 U.S. at 391 ("The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised").  Given the difficulty of making this determination, the Supreme Court in *Randall* noted that it had "no scalpel to probe" each possible contribution level, and that, absent "danger signs," courts should ordinarily defer to the legislature's "particular expertise" on such matters.  548 U.S. at 248-49.

Plaintiffs argue that *Buckley* does not apply to the facts of this case because *Buckley* involved a statute which applied a restriction on contributions on all individuals, regardless of the candidate they chose to support.  Docket No. 73 at 5.  Specifically, plaintiffs argue that the plaintiffs in *Buckley* challenged FECA, which limited

16

contributions by individuals or groups to $1000 regardless of whether their candidate of choice was subject to a primary election.  *Id.*  The Court finds this argument unconvincing.

Generally, almost all contribution limits are dependent on a contributor's preferred candidate.[14]  *See, e.g.,* Colo. Const. art. § XVIII, § 3 (imposing an individual contribution limit of $500 for secretary of state, individual contribution limit of $5000 for governor, etc. . .); *Randall*, 548 U.S. at 238 ($400 limit for governor, $300 for state senator).  Moreover, the Supreme Court has held that contribution bans on discrete groups are not per se unconstitutional.  *See Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 154 (2003) (upholding federal "ban on direct corporate contributions"); *see also Green Party of Conn. v. Garfield*, 616 F.3d 189, 205 (2d Cir. 2010) (finding that Connecticut's outright ban on contributions by "contractors, prospective contractors" is "closely drawn to the state's interest in combating the appearance of corruption").  Thus, contrary to plaintiffs' argument, the *Buckley* court was not troubled with a statute tailoring contribution limits to specific candidates or groups, but rather was concerned about the effect contribution limitations could have on a candidate's ability to run an effective political campaign.  424 U.S. at 33 ("the record provides no basis for concluding that the Act invidiously disadvantages [minor party and independent] candidates").

---

[14]The Court notes that plaintiffs do not appear to make a viewpoint discrimination claim, namely, that Amendment 27 targets contributors of minor or unaffiliated candidates because of the views these candidates have on issues.  *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).  Even assuming plaintiffs raised such an argument, it is unlikely to succeed as plaintiffs have not shown that all minor parties and unaffiliated candidates have a monolithic viewpoint.

Plaintiffs next argue that Amendment 27 infringes their freedom of association rights because it limits contributors' ability to support their preferred candidate based on the candidate's party affiliation.  *See* Docket No. 74 at 5 (arguing that Amendment 27 "sets contribution limitations based upon the candidate that an individual chooses to support").  With regard to plaintiffs' "as applied" challenge, they argue that, because they supported Ms. Curry, a primary-exempt candidate, they were only able to contribute $200 to her 2010 campaign while contributors to major party candidates could contribute up to $400.

As noted above, Amendment 27 limits contributions from all individuals and all political committees to $200 per election.  Contrary to plaintiffs' arguments, Amendment 27 does not link contribution limitations to the identity of the candidates or the contributors, but rather focuses on the process of nomination.  In passing Amendment 27, the voters of Colorado enacted a regulatory scheme within which political parties are free to operate as they desire with the knowledge that the amount of contributions their candidates can accept will depend on whether their candidates are subject to a primary election during an election cycle.

Although it is true that contributors to minor political parties are sometimes subject to a $200 contribution limit, this is not always the case since Amendment 27 does not prescribe the nominating process utilized by minor political parties.  Instead, these parties may require that their desired candidates participate in a primary.  *See generally* Colo. Rev. Stat. § 1-4-1304 (noting that minor political parties can nominate a candidate by convention, assembly, petition, or a primary vote).  If so, contributors could donate a total of $400 to such candidates.

18

In regard to plaintiffs' "as applied" challenge, it is true that contributors to unaffiliated and write-in candidates are limited to contributions of $200 because these candidates are never subject to primary elections. However, a restriction on the amount plaintiffs can donate to a political campaign does not establish a First Amendment violation. To establish that Amendment 27's $200 per-election contribution limit violates their First Amendment rights, plaintiffs (as contributors to unaffiliated and write-in candidates) must show that the $200 per-election contribution limit significantly interferes with their ability to support their favored candidates. *See Randall*, 548 U.S. at 248. Plaintiffs, however, have made no such showing.

Plaintiffs do not argue that the $200 per-election contribution limit prevents their preferred candidates from amassing resources necessary to run a successful campaign. *See Buckley*, 424 U.S. at 21. In addition, plaintiffs also do not claim that the contribution limitations render their contributions pointless. *See Nixon*, 528 U.S. at 397. Moreover, plaintiffs do not contend that Amendment 27 magnifies the advantages of incumbency. *See Randall*, 548 U.S. at 248. In fact, plaintiffs present no evidence about how the $200 per-election contribution limit affects their ability to support the candidates of their choice.

Instead, plaintiffs' entire argument rests on their belief that Amendment 27 creates a two-tiered regulatory scheme. Docket No. 62 at 8; Docket No. 73 at 4. However, such an argument is inappropriate as the basis of a First Amendment challenge. In the election context, the freedom of association guaranteed by the First Amendment is only concerned with how a regulation impacts a contributor's ability to support his or her preferred candidate. *Randall*, 548 U.S. at 246. In this regard, the

19

First Amendment does not balance a contributor's rights vis-a-vis the rights of other contributors, but rather focuses on whether the burden imposed by a regulation is closely drawn to match a sufficiently important state interest.  *Nixon*, 528 U.S. at 387-88.  In other words, the First Amendment focuses on the burden a regulation has on an individual's rights and whether this burden is justified.  Because plaintiffs (as contributors to unaffiliated and write-in candidates) fail to identify a significant interference with their associational rights, the Court finds that Amendment 27 infringes their associational rights, if at all, in a constitutionally insignificant manner.  Thus, although Amendment 27 restricts plaintiffs' ability to contribute in the amount they desire, "[n]either the right to associate nor the right to participate in political activities is absolute."  *Buckley*, 424 U.S. at 25.  Furthermore, Amendment 27 has only a limited impact on plaintiffs' associational rights because it leaves intact their right to make a "symbolic expression of support evidenced by a [$200 per-election] contribution."  *Buckley*, 424 U.S. at 21.

Having determined that Amendment 27 has little impact, if any, on plaintiffs' associational rights, the Court next examines the State's justification for the contribution limit.  The voters of Colorado passed Amendment 27 based upon a finding that large campaign contributions have the potential for and the appearance of corruption.  Colo. Const. art. XXVIII, § 1.  The Supreme Court has held that the prevention of actual and perceived corruption qualifies as an important state interest.[15]  *See, e.g.*, *Buckley*, 424

---

[15]The Court in *Citizens United* did not disturb *Buckley's* holding that eliminating corruption or the appearance thereof is a sufficiently important governmental interest to justify the use of closely drawn restrictions on campaign contributions.  130 S. Ct. 908-09 ("The *Buckley* Court, nevertheless, sustained limits on direct contributions in

U.S. at 27; *Nixon*, 528 U.S. at 390.  This interest exists even where there is no actual

corruption, because the perception of corruption, or of opportunities for corruption

threatens the public's faith in democracy.  *See Fed. Election Comm'n v. Colo.*

*Republican Fed. Campaign Comm.*, 533 U.S. 431, 440-41 (2001); *Buckley*, 424 U.S. at

26-27.  The scope of quid pro quo corruption can never be reliably ascertained and,

therefore, legislatures may regulate certain indicators of such corruption or its

appearance, such as when donors make large contributions.  *Ognibene v. Parkes*, 671

F.3d 174, 187 (2d Cir. 2011) (upholding contribution limits on individuals doing business

with the state).

Plaintiffs argue that defendants have provided no evidence of how a $200 per-

election limit reduces the appearance of corruption.  Docket No. 62 at 13-14.  However,

as the Supreme Court noted in *Nixon*, a "state statute is not void . . . for want of

evidence" and the "quantum of empirical evidence needed to satisfy heightened judicial

scrutiny of legislative judgments will vary up or down with the novelty and plausibility of

the justification raised."  *Nixon*, 528 U.S. at 390-91.  Because the Court "cannot

determine with any degree of exactitude" whether the difference between a $1000 per-

cycle contribution limit and a $200 per-election contribution limit is necessary to carry

out the voters' "legitimate objectives," the Court will defer to the voters' determination of

such matters.  *Randall*, 548 U.S. at 248; *Nixon*, 528 U.S. at 394 ("although majority

votes do not, as such, defeat First Amendment protections, the statewide vote on

Proposition A certainly attested to the perception" of perceived or actual corruption).  In

order to ensure against the reality or appearance of corruption. That case did not
extend this rationale to independent expenditures, and the Court does not do so here").

addition, given that the State's justification is neither novel nor implausible and plaintiffs have failed to show that Amendment 27 imposes a significant interference with their associational rights, the Court finds that "[t]here is no reason to require the legislature to experience the very problem it fears before taking appropriate prophylactic measures." *Ognibene*, 671 F.3d at 188; *see Citizens United*, 130 S.Ct. at 908 (noting that contribution limits serve a preventative function because the scope of quid pro quo corruption "can never be reliably ascertained").

Moreover, the Court finds that Amendment 27 is closely drawn to serve the important State interest of preventing corruption and the appearance of corruption because the $200 per-election contribution limit decreases the influence of large contributions by individuals and political committees, while allowing contributors the freedom to affiliate with their desired candidates and allowing these candidates to amass the resources necessary to wage effective campaigns. *See Montana Right to Life Ass'n v. Eddleman*, 343 F.3d 1085, 1092 (9th Cir. 2003) (noting that after *Shrink* and *Buckley*, "state campaign contribution limits will be upheld if (1) there is adequate evidence that the limitation furthers a sufficiently important state interest, and (2) if the limits are 'closely drawn'-i.e., if they (a) focus narrowly on the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign.").

Furthermore, this case does not present the lower bound of contribution limits which create a risk to the function of the electoral process. *Randall*, 548 U.S. at 248-49. The Supreme Court has held that a contribution limit was not closely drawn to the

22

government's interest on only one occasion.  In *Randall*, the Supreme Court struck

down a Vermont law that imposed a $200 per-cycle contribution limit for individuals

donating to candidates for statewide office.  *See* 548 U.S. at 253-62.  A plurality of the

Court found the Vermont law was "too restrictive" because, among other things, its

limits were so low they raised "danger signs" as to whether the contribution limits were

closely drawn.  *Id*. at 248.  Because there are no such danger signs here,[16] and

plaintiffs have failed to identify how their associational rights are materially harmed, the

Court finds that Amendment 27 does not violate plaintiffs' freedom of association rights

because it does not "burden [plaintiffs'] First Amendment interests in a manner that is

disproportionate to the public purposes [Amendment 27 was] enacted to advance."

*Randall*, 548 U.S. at 262.

---

[16]*Randall*'s danger signs were whether the contribution limits: (1) significantly restrict the amount of funding available to run a political campaign; (2) apply equally to political parties; (3) restrict the use of volunteering or other services provided for no compensation; (4) were not adjusted for inflation; and (5) had a special justification. 548 U.S. at 253-262.  None of these danger signs are present in this case.  First, plaintiffs have offered no evidence showing that the $200 per-election contribution limit significantly restricts the amount of funding available to primary-exempt candidates. *Randall*, 548 U.S. at 253-56.  Second, Amendment 27 does not require that political parties abide by exactly the same contribution limits that apply to individual contributors. *Id*. at 256-59.  Third, the contribution limits here do not include "volunteering services" or other uncompensated activities.  *See* Colo. Const. art. XVIII, § 2(5)(b).  Fourth, the contribution limits are adjusted every four years based on the United States Bureau of Labor Statistics consumer price index for Denver-Boulder-Greeley.  *See* Colo. Const. art. XVIII, § 3(13).  Finally, because there are no "serious associational and expressive problems," *Randall*, 548 U.S. at 261, caused by Amendment 27, defendants do not need any special justification for the contribution limits. Thus, even in light of the *Randall* factors, the Court finds that Amendment 27 is closely drawn to match Colorado's interest in limiting actual corruption or the appearance of corruption.

Given that Amendment 27 and its implementing statutes do not significantly abridge plaintiffs' associational rights, plaintiffs' freedom of expression claim becomes more difficult for plaintiffs to make.  In *Nixon*, the Supreme Court remarked that, if "a contribution limitation surviv[ed] a claim of associational abridgment[, it would likely] survive a speech challenge as well."  528 U.S. at 388.  Moreover, as the Supreme Court in *Buckley* noted, the "quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing.  At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate."  *Buckley*, 424 U.S. at 21.

Plaintiffs here do not provide evidence showing that Amendment 27's contribution limits undermine "the potential for robust and effective discussion of candidates and campaign issues."  *Buckley*, 424 U.S. at 29.  Despite the contribution limitation, plaintiffs remain free to "engage in independent political expression, to associate actively through volunteering their services, and to assist to a limited but nonetheless substantial extent in supporting candidates and committees with financial resources."  *Id*. at 28.  Thus, because plaintiffs may show support for their favored candidates through $200 contributions and a myriad of other activities, plaintiffs have not sufficiently shown that Amendment 27's contribution limits unconstitutionally infringe their First Amendment freedom of expression rights.

As a result, the Court finds that Amendment 27 is constitutional as applied to plaintiffs.  Because a finding that Amendment 27 is constitutional as applied to plaintiffs refutes the contention that Amendment 27 is unconstitutional in all conceivable

circumstances, the Court will not address plaintiffs' facial challenge to Amendment 27. *See Doe v. City of Alburquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (where a statute fails facial constitutional challenge, it can no longer be constitutionally applied to anyone, and thus there is "no set of circumstances" in which the statute would be valid); *United States v. Salerno*, 481 U.S. 739, 745 (1985) (to survive a facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid"). Accordingly, the Court finds that defendants are entitled to summary judgment on plaintiffs' facial and as applied First Amendment challenge to Amendment 27 and its implementing statutes.

### C.   Equal Protection Clause

Plaintiffs argue that Colo. Rev. Stat. § 1-45-103.7 is unconstitutional because it treats contributors to primary-exempt candidates differently than contributors to primary-participant candidates. Docket No. 74 at 7. Specifically, plaintiffs argue that Colo. Rev. Stat. § 1-45-103.7 violates the Equal Protection Clause because it does not restrict when contributors can make donations and does not require that candidates earmark contributions to a particular election (either the primary or the general election). Docket No. 62 at 18-21. Moreover, plaintiffs argue that they are not permitted to contribute the same amount to their preferred candidates as contributors to major political parties can. *Id*.

The Fourteenth Amendment's Equal Protection Clause requires that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Const. amend. XIV. Equal protection of the laws, however, does not guarantee equal

results for all or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). Instead, the Equal Protection Clause seeks to ensure that any classifications the law makes are made "without respect to persons," that like cases are treated alike, that those who "appear similarly situated" are not treated differently without, at the very least, "a rational reason for the difference." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008); *see Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (noting that a person or group is "similarly situated" to another person or group when the two are alike in "all relevant respects").

To establish a claim for violation of the Equal Protection clause, plaintiffs must show: (1) that a similarly-situated person or group; (2) received more favorable treatment from the government; and (3) there was no sufficient reason for the government's differing treatment of the two groups. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009). "Unless a legislative classification or distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

The Court finds that plaintiffs have failed to show that they are similarly situated to contributors who donate to primary-participant candidates. These two groups are dissimilar because they must make different efforts in order to secure their candidates' representation on the general election ballot. For example, contributors to primary-participant candidates must support their preferred candidates – financially and otherwise – through a primary election, which serves as an important function in

Case 1:10-cv-01857-PAB-KMT   Document 98   Filed 02/27/13   USDC Colorado   Page 27 of 33

winnowing out competing interests and securing access to the general election ticket. *Cf. Van Susteren v. Jones*, 331 F.3d 1024, 1027 (9th Cir. 2003) (finding that "partisan and independent candidates, are [not] similarly situated with respect to the routes they must take to get on the general election ballot"); *Curry v. Buescher*, 394 F. App'x 438, 447 (10th Cir. 2010) (finding that an independent candidate in Colorado is not similarly situated to political party candidates).  By contrast, contributors to primary-exempt candidates do not have to support their candidates through a primary and, therefore, are not similar in all relevant respects, namely, the support they must show to get their preferred candidate on the general election ballot.

Even assuming that both sets of contributors are similarly situated, plaintiffs have not shown that contributors to primary-exempt candidates are treated differently than contributors to primary-participant candidates.  Plaintiffs argue that contributors to primary-exempt candidates are subject to disparate treatment because Colo. Rev. Stat. § 1-45-103.7 makes no distinction between contributions made for primaries and those made for a general election.[17]  Docket No. 73 at 7.  Specifically, plaintiffs contend that, because contributors to primary-participant candidates can make a $400 donation before or after the primary election has occurred, Colo. Rev. Stat. § 1-45-103.7 fails to treat contributors to primary-exempt candidates in the same manner it treats contributors to primary-participant candidates.  *Id*.

---

[17]Plaintiffs have not argued that Colo. Rev. Stat. § 1-45-103.7 constitutes an example of invidious discrimination.  *See Nat'l Comm. of Reform Party of U.S. v. Dem. Nat'l Party*, 168 F.3d 360, 366 (9th Cir. 1999) (noting that the term "invidious discrimination" in equal protection analysis generally refers to treating a class differently in order to harm or repress it).

Plaintiffs, however, fail to explain why the timing of a donation constitutes disparate treatment.  Regardless of the timing of a donation, all contributors – no matter who they support – are limited to donations of $200 per-election.[18]  The *timing* of a donation by a contributor to primary-participant candidates has no impact on the permissible *amount* of a donation.  Thus, because contributors are generally subject to a $200 per-election contribution limit, plaintiffs have failed to show how the timing of a donation constitutes disparate treatment.[19]

Plaintiffs' second argument states that, because Colo. Rev. Stat. § 1-45-103.7 does not require that major party candidates earmark contributions to either the primary election or the general election, contributors to primary-exempt candidates are treated differently.[20]  Again, however, plaintiffs fail to explain how a contributor's equal protection rights are violated by the way in which a candidate uses contributions. Regardless of how a candidate uses funds donated to his or her campaign, all contributors remain subject to the same right to express support for their preferred

---

[18]One scenario where a contributor could give $400 for just one election is where a contributor donated $400 to a primary-participant candidate before the primary election and the primary-participant candidate subsequently lost the primary election. However, even assuming this hypothetical, plaintiffs have not shown how a contributor's donation to a candidate who loses a primary election adversely impacts the equal protection rights of contributors to primary-exempt candidates.

[19]Moreover, limiting the time during which a contributor can make a donation runs the risk of unfairly punishing a contributor to a primary-participant candidate who wishes to donate to his or her preferred candidate for the primary election but misses the deadline.

[20]The fact that a primary-participant candidate can commingle his or her funds might have some bearing on the rights of primary-exempt candidates, but this question is not before the Court.  Plaintiffs have disavowed any claims on behalf of candidates in this case.  *See* Docket No. 66.

candidates in the amount of $200 per election.  The rights of contributors to donate

funds to campaigns are not tied to how a candidate eventually chooses to use the

contributions, but rather are based on a contributor's show of support through

contributions.  *See Buckley*, 424 U.S. at 21 ("the transformation of contributions into

political debate involves speech by someone other than the contributor").  Pursuant to

Amendment 27, contributors to primary-exempt and primary-participant candidates can

show support for their candidates in the same manner – a $200 per-election

contribution.  *Id*. at 31 ("Absent record evidence of invidious discrimination against

challengers as a class, a court should generally be hesitant to invalidate legislation

which on its face imposes evenhanded restrictions").

Next, plaintiffs argue that the Supreme Court has never allowed costs as a

justification for treating candidates differently.  Docket No. 73 at 8.  In support, plaintiffs

state that the Supreme Court has never "upheld the constitutionality of a law that

imposes different contribution limits for *candidates* who are competing against each

other."  Docket No. 74 at 8 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 738

(2008) (emphasis added)).  This argument, however, misses the point.  First, plaintiffs'

challenge focuses on the rights of *contributors* and, pursuant to Amendment 27, all

contributors are subject to the same contribution limitations.  Second, *Davis* dealt with

the so-called "Millionaire's Amendment," which imposed a "penalty" in the form of a

disadvantageous "asymmetrical regulatory scheme" on candidates for Congress who

spent large amounts of their own money on their campaigns.  *Davis*, 554 U.S. at 729-

730.  Thus, unlike a case purely about contribution limits, the Supreme Court in *Davis*

addressed a law that burdened a candidate's First Amendment right to spend one's own money on one's own campaign. *Id.* at 738 ("[W]e agree with Davis that this scheme impermissibly burdens his First Amendment right to spend his own money for campaign speech"). Thus, not only was *Davis* primarily a First Amendment case, but Amendment 27 does not impose a similar penalty on candidates for spending their own money. Accordingly, the Court finds that plaintiffs have failed to show that Colo. Rev. Stat. § 1-45-103.7 treats contributors to primary-exempt candidates differently than contributors to primary-participant candidates.

Because plaintiffs cannot show that Colo. Rev. Stat. § 1-45-103.7 treats them differently than other contributors, they have not sufficiently established that Amendment 27 violates any of their fundamental First Amendment rights. Moreover, plaintiffs do not argue, nor do they contend, that they are members of a suspect class.[21] *See Am. Constitutional Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1101 (10th Cir. 1997) (citing *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972)) ("[C]andidacy is not a fundamental right"); *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317, 1324 (9th Cir. 1997) ("[c]andidates do not have a fundamental right to run for public office"). Consequently, rational basis review is appropriate. *See Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1213 (10th Cir. 2002). Thus, even assuming that plaintiffs could establish disparate treatment, because plaintiffs have not shown a violation of their

---

[21]In analyzing plaintiffs' equal protection claim, the Court notes that the Supreme Court has yet to decide what level of scrutiny applies to equal-protection challenges to laws restricting political contributions. However, plaintiffs have cited no case in which an equal protection challenge to contribution limits succeeded when a First Amendment challenge did not. *See Wagner v. Fed. Election Comm'n*, --- F. Supp. 2d ----, 2012 WL 5378224, at *10 (D.D.C. Nov. 2, 2012) (noting same).

fundamental rights or that they are members of a suspect class, defendants' rationale for Amendment 27's classification would be subject to rational basis review.  *Tonkovich*, 159 F.3d at 532 (courts will uphold a law if it does not target a fundamental right or a suspect class, so long as it is rationally related to a legitimate end).

Under rational basis review, the burden is on plaintiffs to show there is no rational basis for Amendment 27's contribution limits and defendants need not articulate the rationale supporting the amendment's classification or produce evidence to sustain its rationality.  *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) (finding that, under rational-basis review, "[t]he government violates the Equal Protection Clause when it treats someone differently than another who is similarly situated without a rational basis for the disparate treatment").  Defendants have provided a rational basis for Amendment 27's $200 per-election contribution limitation.  Ryan Call, the chairman of the Denver County Republican Party in 2010, testified at the preliminary injunction hearing that candidates who must participate in both the primary and general election incur more costs than candidates who qualify directly for the general election ballot.  Docket No. 36 at 91-93.  Plaintiffs do not disagree with this testimony.  Instead, plaintiffs claim that 89% of candidates who appear on a primary ballot face no primary opponents.  Docket No. 74 at 8.  However, it is undisputed that at least some primary-participant candidates participate in contested primary elections.  Moreover, Mr. Call also testified that, even if the primary is uncontested, primary-participant candidates often spend contributions on activities such as clearing the field of potential challengers, spending money on campaign literature, retaining staff, securing volunteers, and purchasing web domains.

Docket No. 36 at 100-101.  By contrast, it is undisputed that no Libertarian Party candidate incurs any costs related to a primary election or clearing the field.  Docket No. 71 at 3, ¶¶ 5-6.

Based on the foregoing, the Court finds defendants have provided evidence showing that Amendment 27's contribution limitations are rationally related to a legitimate government interest.  *See Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) ("In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification").  Plaintiffs, on the other hand, have not shown that there are no "reasonably conceivable state of facts" that could provide a rational basis for Amendment 27's contribution limitations.  *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).  Additionally, invalidation of the $200 per-election contribution limitation would place candidates who go through contested primaries at a disadvantage vis-a-vis primary-exempt candidates.

As a result, because Amendment 27 is rationally related to a sufficiently important government interest, the Court finds that Amendment 27 is constitutional as applied to plaintiffs.  Because Amendment 27 is constitutional as applied to plaintiffs, the Court will not address plaintiffs' facial challenge to Amendment 27.  *See Doe*, 667 F.3d at 1127.  Accordingly, the Court finds that defendants are entitled to summary judgment on plaintiffs' facial and as applied Fourteenth Amendment Equal Protection challenge to Amendment 27 and its implementing statutes.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Memorandum of Law in Support Thereof [Docket No. 62] is **DENIED**.  It is further

**ORDERED** that defendants John Hickenlooper and Scott Gessler's Motion for Summary Judgment [Docket No. 70] is **GRANTED**.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is **CLOSED.**

DATED February 27, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge